



## MEMORANDUM OPINION

No. 04-09-00467-CR

Lucas **HERNANDEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-2914
Honorable Sid L. Harle, Judge Presiding[1]

Opinion by:    Marialyn Barnard, Justice

Sitting:        Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Marialyn Barnard, Justice

Delivered and Filed: March 17, 2010

AFFIRMED

A jury found appellant Lucas Hernandez guilty of aggravated robbery. After Hernandez pled

true to an enhancement allegation based on a prior conviction, the trial court sentenced Hernandez

to forty-five years confinement in the Texas Department of Criminal Justice-Institutional Division.

---

[1] The Honorable Sid L. Harle, judge of the 226th Judicial District Court, was sitting by assignment in the 186th Judicial District Court for purposes of the felony reduction plan, which used any available trial judge to hear the next available felony case.

On appeal, Hernandez contends the evidence was factually insufficient to support his conviction for aggravated robbery. We affirm the trial court's judgment.

## BACKGROUND

Lucio Blake, the complainant, testified that he and two female companions, Jennifer Cuellar and Christina Dominguez, went out around 8:00 or 9:00 p.m. in the evening. They first went to the Silverado bar, but around 11:00 p.m., decided to go to Club Movida. At Club Movida, the three drank for a while, but when Blake noticed a waitress, who was in the company of Hernandez, staring at him and his companions, he became bothered and they left. It was approximately 1:00 a.m. when the three left Club Movida.

Blake testified he went to his vehicle, opened the door, got the women inside, and turned the ignition. Before he could close the door to his vehicle, Hernandez grabbed the gear shift and told Blake, "Give me all your sh–." Blake told Hernandez to "chill," "get back." In response, Hernandez pulled out a gun and hit Blake in the head with it. After hitting Blake in the head, Hernandez grabbed a chain from Blake's neck–the chain was given to Blake by his deceased brother, and it was very important to Blake. Blake said that the hit to his head dazed him, and caused a little pain. After taking the chain, Blake said Hernandez walked away.

Blake said he decided to follow Hernandez, who by this time had gotten into a car. While following Hernandez, Cuellar called 911, but gave the phone to Dominguez, who gave the operator the license plate and description of the car driven by Hernandez. At some point, Hernandez realized Blake was following him. According to Blake, Hernandez stopped his vehicle, got out, and fired at Blake's vehicle. Blake believed they were going to be hit because Hernandez was pointing the gun toward them. Blake testified he quickly drove past Hernandez's vehicle to a cousin's house.

Dominguez remained on the phone with 911 the entire time the group was following Hernandez. By the time Blake reached his cousin's house, officers were arriving as well.

Cuellar testified she was standing beside the passenger door of Blake's vehicle when she saw Hernandez walk up to Blake. Cuellar said she heard Hernandez tell Blake to give him the chain. She stated she saw Hernandez pull out a gun and hit Blake in the head with it. Cuellar was scared because Hernandez had a gun, and she headed back toward the bar. Cuellar stated she did not enter the bar, but called her father and asked him to meet them–she was crying. She said she then saw Hernandez leave, and Blake pulled up to where she was standing and told her to get in. She got into the vehicle and called 911. However, she testified she was "too scared and panicking" to talk, so she passed the phone to Dominguez. Cuellar confirmed Blake's testimony that they followed Hernandez, and Hernandez shot at them.

Dominguez also testified. She testified that as the three of them were leaving Club Movida, she noticed Hernandez talking to a waitress. She exchanged "hellos" with Hernandez as she and her friends walked out the door. Dominguez said Hernandez followed them out of the club. Dominguez testified it seemed as though Hernandez believed Blake was talking to him, but in fact Blake was talking to Cuellar and Dominguez. Hernandez approached Blake, asking Blake if Blake knew him. Almost immediately, Hernandez told Blake to give him everything he had. Dominguez, who was in the backseat of Blake's vehicle behind the driver's seat, then heard Hernandez order Blake to give him his necklace. Blake refused, and Hernandez took out a gun and hit Blake in the head with it. Dominguez testified Hernandez showed the gun to her, and she was scared.

Dominguez confirmed that the three of them followed Hernandez, calling 911 and relaying a description of the vehicle and the plate number. It was Dominguez, in fact, who was talking to the 911 operator. She confirmed that they stopped following Hernandez after Hernandez shot at them.

After the 911 call was received, San Antonio Patrol Officer Roger Young received a dispatch describing Hernandez's vehicle. When Officer Young spotted a vehicle matching the description, he followed it to a bar. The officer approached Hernandez, placed him in handcuffs, and searched him. Officer Young found a gold necklace in Hernandez's pocket, and police ultimately recovered a handgun from Hernandez's vehicle. Blake later identified the necklace as the one pulled from his neck.

After Hernandez was apprehended, officers placed Blake, Cuellar, and Dominguez in separate police cars and took them from Blake's cousin's house to the bar where police had captured Hernandez. The three were independently asked to identify Hernandez, and all three told police Hernandez was the robber. Eventually, all three gave statements to police, and all three identified Hernandez at trial as the person who committed the robbery.

## ANALYSIS

Hernandez raises one issue on appeal, arguing the evidence is factually insufficient to support his conviction for aggravated robbery. Specifically, Hernandez contends the evidence is insufficient to establish Blake was in fear of imminent bodily injury or death. We disagree.

In reviewing the factual sufficiency of the evidence, the evidence is reviewed in a neutral light rather than in the light most favorable to the verdict, giving almost complete deference to the jury's determinations of credibility. *Williams v. State*, No. AP-75,811, 2009 WL 4825039, at *6 (Tex. Crim. App. Dec. 16, 2009) (citing *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App.),

*cert. denied*, 552 U.S. 920 (2007)); *Caballero v. State*, 292 S.W.3d 152, 154 (Tex. App.—San Antonio 2009, pet. ref'd). Evidence is factually insufficient when the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust, or the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Williams*, 2009 WL 4825039, at *6 (citing *Young v. State*, 283 S.W.3d 854, 862 (Tex. Crim. App. 2009)); *Caballero*, 292 S.W.3d at 154.

A person commits the offense of robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, the person intentionally, knowingly, or recklessly causes bodily injury to another or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02 (Vernon 2003). A person commits the offense of aggravated robbery if the person commits the offense of robbery and uses or exhibits a deadly weapon. *Id*. § 29.03(a)(2).

Hernandez argues Blake was not in fear of imminent bodily injury or death because Blake admitted that when Hernandez hit him on the head with the gun it caused only "a little pain, not major." Moreover, Hernandez contends Blake's decision to follow Hernandez instead of waiting for police, proves Blake was not in fear of injury of death. Hernandez also suggests that Blake's alcohol consumption before the robbery might have affected his ability to remember correctly the events of that evening.

The evidence showed Hernandez pulled out a handgun and hit Blake in the head with it when Blake did not immediately comply with his request to give Hernandez "his sh–." Hernandez also forcibly removed a necklace from Blake's neck. When he discovered he was being followed, Hernandez fired at Blake's vehicle while Blake and his companions were inside. Blake testified that

when Hernandez pulled out the gun it was "scary . . . I could have lost my life there." Blake said the gun made him fearful, and he felt like he had to fight for his life. He reiterated that he feared he was going to lose his life. As for why he would follow an armed suspect who had just robbed him, Blake made it clear that the necklace taken by Hernandez had strong sentimental value because it was given to him by his deceased brother. And, Blake and his companions did call police, giving them crucial information that allowed police to apprehend Hernandez.

It was the jury's province to determine whether it believed Blake feared imminent bodily injury or death. *See Caballero*, 292 S.W.3d at 154. Whether the jury believed this was based solely Blake's credibility. Given its verdict, the jury obviously believed Blake feared imminent bodily injury or death, and they were entitled to believe that based on Blake's testimony. Giving deference, as we must to the jury's credibility determinations, we hold the evidence was factually sufficient to prove Blake was in fear of imminent bodily injury or death so as to support Hernandez's conviction for aggravated robbery. The evidence pointed to by Hernandez–Blake's drinking, *de minimis* pain, and decision to follow Hernandez after the robbery–does not outweigh the supporting evidence by the great weight and preponderance so as to render the verdict clearly wrong and manifestly unjust. *See Williams*, 2009 WL 4825039, at *6 (citing *Young*, 283 S.W.3d at 862). Accordingly we overrule Hernandez's sole issue, and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish